UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| RONALD TERRELL, ) | |
| ) | |
| Plaintiff, ) | No. 5:16-CV-189-REW |
| ) | |
| v. ) | |
| ) | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Ronald Terrell appeals the Commissioner's denial of his application for disability benefits.[2] The parties filed cross-motions for summary judgment. The Court **GRANTS** the Commissioner's motion (DE #16) and **DENIES** Terrell's motion (DE #15) because substantial evidence supports the findings resulting in the administrative decision, and the decision rests on proper legal standards.

---

[1] The Court substitutes Nancy A. Berryhill as the current Acting Commissioner of Social Security per Fed. R. Civ. P. 25(d).

[2] Terrell applied for both Title II disability insurance benefits and Title XVI supplemental security income, which the Court collectively refers to as "benefits." *See* R. at 162-68. The "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at \*3 (6th Cir. 1991) (table). "The standard for disability under both the DIB and SSI programs is virtually identical." *Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at \*3 (E.D. Mich. Jan. 14, 2013), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *see also Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at \*4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI."); *Spencer v. Colvin*, No. 5:14-CV-352-REW, 2015 WL 4621882, at \*1 n.1 (E.D. Ky. July 30, 2015).

1

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Terrell is currently 64 years old. *See* R. at 60 (indicating date of birth of 6/13/1953). He alleges disability beginning on July 10, 2013. *See* R. at 23. Terrell applied for benefits in mid- to late-2013. *Id.* His claims were initially denied on December 17, 2013, *see* R. at 99-102, and upon reconsideration on February 14, 2014. *See* R. at 104-06. Terrell then filed a written request for a hearing on February 18, 2014. R. at 118. Administrative Law Judge (ALJ) Don C. Paris held a video hearing on the application on April 29, 2015. R. at 129. At the hearing, Terrell appeared and testified; Timothy Elrod or Andrew Youngman[3] represented him. R. at 37. Stephanie Barnes, an impartial vocational expert (VE), also testified. *Id.* The ALJ subsequently denied Terrell's claims on May 18, 2015. R. at 23-30. The Appeals Council denied review and thus upheld the ALJ's decision on April 16, 2016. R. at 1-3.

The ALJ made several particular findings in the required rubric. He determined that Terrell did not engage in substantial gainful activity from July 10, 2013, the alleged onset date, through May 18, 2015, the date of decision. *See* R. at 24, 25. The ALJ next determined that Terrell has two severe impairments: degenerative disc disease of the cervical spine and chronic low back pain. R. at 26. However, ALJ Paris then found that Terrell did "not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" *Id.* The ALJ further found that Terrell "ha[d] the residual functional capacity [(RFC)] to perform a range of medium work" with a variety of listed limitations. R. at 27. ALJ Paris, relying on VE verified input, considered Terrell's age, education, work experience, and RFC to determine that "[t]here are jobs that exist in significant numbers in the national economy that [Terrell] can perform[.]" R. at 29. Based on

---

[3] The transcript indicates Timothy Elrod represented Terrell at the hearing. R. at 37. The ALJ, however, stated that non-attorney Andrew Youngman represented Claimant. R. at 23.

2

all these considerations, the ALJ ruled that Terrell was "not under a disability . . . from July 10, 2013" through May 18, 2015. *Id.* Unsatisfied with the result of the SSA's administrative process, Terrell turned to federal district court for review.

## II. ANALYSIS

### A. *Standard of Review*

The Court has carefully read the ALJ's full decision and all medical reports and evidence it cites. The Court also read and considered the full administrative hearing and record. Judicial review of the ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court, on review, does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence, even substantial evidence, to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the

3

Court must affirm the ALJ's decision if substantial evidence supports it, even if the Court might itself have decided the case differently. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110. At Step 2, the ALJ determines whether any of the claimant's impairments are severe. *Id.* At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Id.* At Step 4, the ALJ determines RFC and then whether the claimant can perform past relevant work. *Id.* The inquiry at this stage is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden of proof shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to his interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the SSA's construction of the statute should be

followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

  B.  *The ALJ did not commit reversible error in his RFC assessment.*

First,[4] Terrell generally argues that ALJ Paris erred in his assessment of Terrell's RFC. Terrell asserts that the "overwhelming weight of the . . . evidence" supports a disability finding. DE #15-1, at 5. In particular, he quarrels with the ALJ's decision to assign little weight to Dr. David L. Winkle's opinion and great weight to the state agency consultants'. *Id.* at 7-8.

The Court excerpts ALJ Paris's RFC finding explanation:

> At the hearing, the claimant testified that he has numbness in his shoulder down into his arm and fingers, with severe pain in his cervical spine. On examination in June of 2013, Vickie Marple, NP noted decreased range of motion in the neck and back, but no neurological findings such as weakness or loss of sensation (Exhibit 2F, p. 3). However, MRI of the cervical spine in September of 2014 identified moderate to severe degenerative changes with moderate to severe spinal stenosis and severe neural foraminal narrowing at multiple levels (Exhibit 6F, pp. 7-8). David Winkle, M.D. examined the claimant in November of 2013. Dr. Winkle observed that the claimant had no apparent gait disturbance and moved about without any assistive device. He was able to get up and down from the chair and examination table without difficulty or assistance, and was able to tandem walk and walk on toes and heels. He was able to knee squat, and showed no sensory losses. Reflexes were 2+ and symmetric, grip strength and fine manipulation were normal, and straight leg raising was negative. He had tenderness in the lumbar area, but normal range of motion throughout. X-ray of the lumbar spine was unremarkable except for minimal hypertrophic lipping of the L5 vertebra. Dr. Winkle diagnosed cervical and lumbar pain secondary to degenerative disease, with radiculopathy to the left upper extremity (Exhibit 4F).
>
> Dr. Winkle stated that the claimant would be limited to standing about 30 minutes at a time; could stand and walk four hours in an eight hour day; and could lift and handle 40 pounds occasionally and 25 pounds frequently (Exhibit 4F). **The undersigned gives little weight to Dr. Winkle's opinion, however, as his own examination provided no support for such limitations and they appear to be based on the claimant's subjective report rather than any objective evidence or observations.**

---

[4] Terrell's brief contains an amalgamation of arguments at DE #15-1, at 5-9. The Court organizes and assesses the claims as best it can.

R. at 27-28 (emphasis added). Additionally, ALJ Paris found that Terrell's own "statements concerning the intensity, persistence and limiting effects of the[] symptoms are not entirely credible[.]" R. at 28. The ALJ gave state-agency doctors Nicole Mannis's and Robert Brown's opinions "great weight" because they are "consistent with the medical evidence of record." *Id.* ALJ Paris certified multiple times that he gave "careful consideration [to] all the evidence" and "the entire record[.]" R. at 24-25, 27. Brown, in particular, formulated exertional limitations lower than Winkle, and he viewed Winkle as overstating the degree of impairment. R. at 92 ("The CE examiner's opinion is an overestimate of the severity of the individual's restrictions / limitations and based only on a snapshot of the individual's functioning.").

As a starting point, as the Commissioner argues, no single medical source is alone necessary or conclusive on the RFC issue. *See Blakley*, 581 F.3d at 409; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379 (6th Cir. 2013) ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error."). Therefore, Terrell's argument concerning a lack of ALJ citation to evidence "from any examining or treating medical provider," including from Dr. Housam Haddad, leads, as an independent matter, to no relief. Also, the Court may, of course, consider pieces of record evidence "even if the ALJ failed to cite" them. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

As to Terrell's other RFC-centered arguments, ALJ Paris reached three significant underlying results in determining the RFC; substantial record evidence supports each.

*First*—The ALJ reasonably discounted Winkle's opinion.

Dr. Winkle's at-issue November 2013 assessment is located at R. at 289-95. In the report, Winkle noted that Terrell had "no pain with straight leg raising." R. at 290. Dr. Winkle observed that Terrell's "range of motion," including that "of the lumbar area and cervical area[, was] within normal limits." R. at 291. An x-ray revealed to Winkle "a normal alignment of the bony structures within the lumbar area. The disc spaces appear[ed] well preserved." *Id.* Terrell's lumbar area was "unremarkable" to Dr. Winkle. *Id.* According to the doctor, Terrell moved "about the examination room . . . without using any assistive devices and with no apparent gait disturbance." *Id.* He got up and down from the exam table "without difficulty or assistance." *Id.* The examination showed "normal strength and dexterity in the upper and lower extremities" and no apparent "issues with his mobility." *Id.* at 291. The back examination revealed only "tenderness in the lumbar area." *Id.* at 290. Winkle concluded, from this rather unexceptional assessment, that Terrell could only "stand for about 30 minutes at a time" and for "at least four hours in an 8-hour day." *Id.* at 291. Dr. Winkle found that Terrell could "lift and handle 40 pounds occasionally and 25 pounds more frequently." *Id.* The ALJ ultimately gave Winkle's conclusions little weight because Winkle's "own examination provided no support for such limitations and they appear to be based on the claimant's subjective report rather than any objective evidence or observations." R. at 28.[5]

ALJ Paris's assessment here is undoubtedly reasonable. Dr. Winkle's conclusions draw no apparent support from the actual examination findings. Winkle textually based his opinion ***entirely*** on Terrell's "back pain" or, differently phrased, "back problems." R. at 291 (drawing conclusions solely "[b]ecause of" these issues). However, as just recounted, and as the ALJ concluded, Winkle himself documented **no** such disabling back pain or problems in his own

---

[5] The range of motion chart attached to the report appeared fully normal in all respects, including as to the cervical and lumbar areas. R. at 293-94.

report. To the contrary, and but for one area of tenderness, Winkle consistently reported that Terrell had "no pain," a "normal" range of motion, "a normal alignment of the bony structures within the lumbar area," "well preserved" disc spaces, an "unremarkable" lumbar area, and no difficulty moving around the examination area or on or off the exam table. R. at 290-91. Terrell had no strength or ambulation deficits.

Rather, the basis for Winkle's reliance on Terrell's back pain / problems was Terrell's self-reported history. *See* R. at 289 (noting the "history of back pain" and recounting history based on what "he [Terrell] said" and Claimant's "state[ments]"). Terrell himself "state[d] his lower back bothers him 3-4 times per week" and that "prolonged standing over about 30 minutes tends to aggravate his lower back." R. at 290. An ALJ may discount a medical opinion when it is "based not upon [the provider's] own medical conclusion," but instead on the claimant's "own assessment of his . . . limitations." *Warner*, 375 F.3d at 391; *see also Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014). The ALJ defensibly seized on that criticism here.

ALJ Paris, in his opinion, as relevant here, also found that Terrell's "statements concerning the intensity, persistence and limiting effects of the[] symptoms are not entirely credible[.]" R. at 28. This assessment too finds substantial record support.[6] Terrell, at the April

---

[6] The ALJ's claimant credibility analysis is the *second* issue the Court perceives Terrell to raise. The Court considers this topic here due to its interconnectedness with the evaluation of Winkle's opinion. Terrell cites no law on the general issue of an ALJ assessment of a claimant's credibility. "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). "However, the ALJ is not free to make credibility determinations based solely upon an intangible or intuitive notion about an individual's credibility. Rather, such determinations must find support in the record." *Id.* (internal quotation marks and citation omitted). The "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation removed); *see also Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (affording a credibility determination "special deference because the ALJ is in the best position

2015 ALJ hearing, described his back pain as "severe" and "sharp." *See, e.g.*, R. at 46; *see also, e.g.*, R. at 210. He certainly noted *some* degree of limitation in daily activities, but he consistently asserted a large degree of continuing ability. For example, the ALJ asked about Claimant's ability to walk. Terrell responded that he walks "[a]s much as [he] possibly can," approximately 400-500 feet, basically the length of 1.5 football fields. R. at 47-48. He tries "to do that every day." R. at 48. He suggested he takes such walks "3-4 times" each day. *Id.* at 47. Terrell said he can stand for 20 minutes at a time and can bend "[a] little bit if [he] really has to." *Id.* at 48. He had no problems, except some occasional tingling, with his hands or fingers. *Id.* He takes care of his own bathing and shaving. R. at 50. He "usually" makes his own frozen dinners, and he shops at Kroger every few weeks. *Id.* Claimant regularly interacts with visitors and family. R. at 51-52. He watches TV, listens to music, and tries "to get outside as much as [he] possible can," even if he just goes outside and sits. R. at 52. Terrell said he loves watching UK basketball and expressed a desire to begin attending church. R. at 52-53.[7]

Terrell's November 2013 questionnaire indicates nothing disabling, and certainly nothing to the extent of the testimony; he certified that his conditions cause no problems with his personal care, R. at 196, that he does not need reminders to take medicine, R. at 197, and that he prepares meals for himself daily. *Id.* He indicated he does his own laundry and cleaning and that he sometimes mows. *Id.* Terrell said he goes outside 5-10 times per day, both via walking and driving. R. at 198. He shops in stores, pays his own bills, counts change, handles a savings account, and uses a checkbook. *Id.*; *accord* R. at 213. Indeed, the questionnaire reveals that Terrell apparently continued working in a period he claims to have been disabled: he said,

---

to see and hear the witness and determine credibility"). The ALJ saw Terrell first-hand and accounted for the full record in assessing his testimony.

[7] "An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532.

without explanation, that he "tak[es] payments & rent[s] [storage] units that are available to new customers." R. at 195. Interestingly, in December 2014, Terrell responded to a Pain and ADL questionnaire by putting his standing / walking limit at 1.5 hours: "Don't walk and stand much over about 1 ½ hours." R. at 213. This is dramatically different from the 20 minute limit Terrell claimed at the hearing and the 30 minute limit claimed before Dr. Winkle. ALJ Paris had substantial reasons to doubt Terrell's self-assessment.

The historical records confirm a disconnect between Terrell's subjective complaints and his objective ability reports and the objective medical evidence. For example, NP Vickie Marple indicated in June 2013 that Terrell went to a chiropractor, who advised "that his neck was doing much better." R. at 246.[8] Terrell was in "no apparent distress" before Marple. R. at 247. He, inconsistently in the record, had normal neck range of motion, R. at 248, and decreased neck range of motion. *Id.* The 2012-13 chiropractor notes consistently indicate merely "dull" pain. R. at 257-88. Indeed, the chiropractor noted Terrell's "improvement" on September 17, 2012. R. at 263. Terrell continued to improve in November 2012; he was "doing better" and had "changed a lot of lightbulbs" on November 16, 2012. R. at 266. He had "hung up Christmas lights" in December 2012. R. at 267. Terrell continued to feel better in March 2013, R. at 275, through August 2013, R. at 285.

As Claimant emphasizes, a September 2014 MRI of Terrell's cervical spine indeed indicated "[m]oderate to severe degenerative changes[.]" R. at 321-22.[9] A June 5, 2015 (post-

---

[8] Terrell also cites to R. at 319, which indeed indicates a notation of "neck & l. shoulder pain" in February 2014. No party disputes that Terrell endures some pain, but, as the Court documents in this Opinion, substantial medical evidence counters the claim (especially when applying the applicable deferential standard of review) of the disabling intensity of this pain. In the Court's assessment, substantial evidence supports the ALJ's determination, even if some evidence likewise supports an opposite conclusion.

[9] Dr. Haddad also made, for example, various notations of "spinal stenosis (severe)" in 2014-15. R. at 330, 331, 342. The bulk of Dr. Haddad's handwriting is otherwise illegible, to the Court.

MRI), report indicates, though, that Terrell had only "minimal leftward curvature of the lumbar spine," with "no acute lumbar spine fracture or subluxation" and merely "[m]ild lower lumbar spine facet arthropathy." R. at 343. Dr. Shane Desimone diagnosed only "[m]ild lumbar spine degenerative changes" approximately 9 months after this MRI. *Id.* An examination in May 2015, for instance, revealed the chiropractor's objective findings to be significantly less extreme than Terrell's subjective complaints. R. at 345. Post-hearing, even per Terrell's own reports, his symptoms improved in June 2015. R. at 346. He may have had a setback in early August 2015, but he then reported that his conditions were "[i]mproving" on August 26, 2015. R. at 350.

In light of the evidence, the ALJ reasonably discounted the veracity of Terrell's subjective complaints of pain, which find exceedingly little objective support in the record. *See, e.g.*, *Walters*, 127 F.3d at 531-32 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). The Court certainly finds substantial evidence in this record to support the ALJ's assessment (even if there also exists evidence to counter it). Substantial record evidence supports the ALJ's finding that Terrell's subjective statements are not entirely credible. Accordingly, ALJ Paris reasonably discounted Winkle's opinion, which was based wholly on Terrell's statements; the ALJ's independent conclusion on Terrell's credibility, under the applicable standard, was proper.

*Third*—The ALJ did not err in giving great weight to Mannis's and Brown's opinions.

Nicole Mannis, Psy.D., and Robert K. Brown, M.D., are state-agency consultants who evaluated Terrell's disability status. *See* R. at 84-94. The ALJ gave their evaluations "great weight" because "they are consistent with the medical evidence of record." R. at 28. As a general matter and a foundational starting point, an opinion from a non-examining consultant may alone

be the basis for the ALJ's opinion, *even when* it conflicts with one from a treating source. *See Blakley*, 581 F.3d at 409; *Gayheart*, 710 F.3d at 379 ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians."); *Helm*, 405 F. App'x at 1002 ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'"); *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) ("To be sure, the ALJ's decision to give greater weight to [a consultant's] opinion was not, in and of itself, error.").

Dr. Mannis evaluated Terrell's psychiatric complaints. *See* R. at 89. She noted that Terrell had "[n]o history of psychiatric hospitalization or engagement in outpatient counseling." *Id.* Mannis found significant Terrell's "appropriate affect and demeanor" and lack of difficulty "following instructions, managing money, or completing personal care, cleaning, and household chores," as well as shopping and operating a vehicle. *Id.* Mannis found that Terrell's "report of difficulty with concentration . . . is not supported by" the record. *Id.* Mannis's assessment, in light of the Court's review of the record, summarized above, undoubtedly squares with the evidence. She accurately summarized Terrell's own reports, and made a finding of inconsistency between Terrell's subjective complaints and the objective medical evidence that substantial record evidence supports. The ALJ properly afforded Mannis's report great weight. Terrell makes no significant contrary argument.

Dr. Brown evaluated Terrell's physical complaints. *See* R. at 90-92. He found Terrell's subjective reports to be "partially credible" because, while the "medical and non medical evidence does not support the degree of the opined BWA [basic work activity] limitation," "the overall evidence does support some limitation of the identified basic work activity." R. at 90. Dr.

Brown assigned Terrell certain exertional limitations, citing objective medical evidence to support each rating. *Id.* (referencing Terrell's normal extremity exam, acknowledging Terrell's back tenderness, and referencing the "minimal degenerative changes" the record supported). Dr. Brown specifically evaluated Dr. Winkle's 11/21/13 report and found it to be "an overestimate of the severity of [Terrell]'s restrictions / limitations and based only on a snapshot of [Terrell]'s functioning." R. at 92. Substantial record evidence, as the Court reviewed above, supports Brown's assessment. ALJ Paris, accordingly, properly afforded Brown's conclusions great weight.

Attempting to counter the state-agency doctors' conclusions, Terrell tries to assign great significance to the fact that, based on the timeline, Mannis and Brown could not have reviewed the results of the September 2014 MRI when issuing their opinions. *See* DE #15-1, at 8. "The ALJ" is, however, "entitled to assign significant weight to the opinions from . . . medical consultants despite the fact that they did not review all of the medical records." *Carter v. Astrue*, 886 F. Supp. 2d 1093, 1111 (N.D. Iowa 2012); *accord Cook v. Astrue*, 629 F. Supp. 2d 925, 932-33 (W.D. Mo. 2009) (refusing to adopt "a per se rule that failure to send medical records to be reviewed . . . automatically results in the opinion of that doctor not being entitled to substantial weight").[10]

Here, of course, the ALJ explicitly considered the September 2014 MRI, *see* R. at 27-28 (acknowledging this MRI and the results), but still found Terrell to be not disabled. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 513 (6th Cir. 2010) ("Even if Dr. Hernandez's [(a state-agency consultant's)] RFC was completed without knowledge of [certain medical] issues,

---

[10] To be sure, a medical source's inability to examine the full record certainly is not ideal, *see, e.g.*, *Barrett v. Astrue*, No. 09-11-GWU, 2009 WL 3270264, at *4 (E.D. Ky. Oct. 9, 2009) (remanding when doctor did not review critical MRI results and "did not have the opportunity to see and review the numerous exhibits which came after his November 2004 review"), but on these facts, for the reasons explained herein, does not require remand.

13

however, the record reflects that the ALJ considered them."). ALJ Paris pithily summarized: "While [the] MRI has identified degenerative disc disease of the cervical spine with significant spinal and foraminal stenosis, examinations have repeatedly noted few findings to suggest limitations[.]" R. at 28. Indeed, *numerous* post-MRI medical reports harmoniously indicate that Terrell showed improvement and had less severe restrictions than the MRI might itself suggest. *See* R. at 343 (6/5/15: Terrell had only "minimal leftward curvature of the lumbar spine," with "no acute lumbar spine fracture or subluxation" and merely "[m]ild lower lumbar spine facet arthropathy."); *id.* (Desimone diagnosing only "[m]ild lumbar spine degenerative changes"); R. at 345 (May 2015: revealing the chiropractor's objective findings to be significantly less extreme than Terrell's subjective complaints); R. at 346-38, 350 (June—August 2015: reporting continued improvement in Terrell's symptoms).

Accordingly, here, when the ALJ explicitly considered the disputed piece of medical evidence and the post-MRI proof is inconsistent with the MRI inferences Plaintiff draws, there is no error in assigning great weight to the consultants' conclusions. *Ealy*, 594 F.3d at 513; *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (affirming decision where "state agency physicians' opinions . . . did not account for changes in [the claimant's] medical condition" but where the ALJ "considered the medical examinations that occurred after [the] assessment . . . and took into account any relevant changes in [the claimant's] condition"). Additionally, nothing in Brown's or Mannis's report suggests that the MRI results, on this record, would have altered the expressed views. Mannis's report was about psychological issues, and Brown explicitly acknowledged and was well aware of Terrell's "degenerative disease" and "back pain." R. at 91-92. The ALJ assessed the overall proof in a reasonable manner, rationally accounted for the post-evaluation MRI, and rested his conclusions on substantial evidence.

C.  *The ALJ did not commit reversible error at Step 5.*

Terrell additionally contends that, "[g]iven [his] age, education and work history, the Social Security grid rules direct a finding that he is not able to perform substantial gainful activity." DE #15-1, at 5-6. Claimant particularly cites "Grid Rule 202.02" and invokes Winkle's examination findings. *Id.* at 6-7, 9.

This argument relates to the ALJ's Step 5 determination. *See* R. at 29. At Step 5, where the burden shifts to the Commissioner, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2). The Sixth Circuit has described the applicable standard:

> At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). In many cases, the Commissioner may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills. *Wright v. Massanari,* 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.,* 893 F.2d 821, 822 (6th Cir. 1990). **However, if a claimant suffers from a limitation not accounted for by the grid, the Commissioner may use the grid as a framework for her decision, but must rely on other evidence to carry her burden**. *Id.* **In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy**. *Heston* [*v. Comm'r of Soc. Sec.*]*,* 245 F.3d [528,] 537-38 [(6th Cir. 2001)]; *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 150 (6th Cir. 1996).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (emphases added); *see also Heston*, 245 F.3d at 537.

Foundationally, for the reasons already explained in detail in Part II.B, the ALJ reasonably discounted Dr. Winkle's opinions. Terrell's attempt to rely on Winkle's report here

15

likewise is unavailing. The Court views this Winkle-dependent argument, in light of the ALJ's reasonable rejection of Winkle's opinions, to be faulty at root.

Even if the ALJ had given more weight to Winkle's opinion, however, such reliance would not mandate a disabled finding under Rule 202.02, per the explicit discussion in *Wilson*. Section 202 of Appendix 2 to Subpart P of 20 C.F.R. Part 404 applies to claimants limited, among other ways, to "light work." *See Heston*, 245 F.3d at 538 ("Vocational Rule 202.02 applies if the claimant is capable of performing only light work."). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Medium work," for its part, "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.* § 404.1567(c); *see also, e.g.*, *Kifayeh v. Colvin*, 99 F. Supp. 3d 369, 375-76 (E.D.N.Y. 2015).

Winkle opined that Terrell could lift 40 pounds occasional and 25 pounds frequently—well in excess of the "light work" requirement, but not quite satisfying the requirements for "medium work." *See* R. at 291. Thus, according to Winkle, Terrell "suffer[ed] from a limitation not accounted for by the grid," meaning that the ALJ properly could rely on VE testimony to make the Step 5 finding. *Wilson*, 378 F.3d at 548-49; *Heston*, 245 F.3d at 538 (relying on VE testimony when the medical source stated that the claimant could lift 30 pounds). Terrell's "ability to lift" fell "between the definitions of light and medium work. Therefore, the ALJ could not accurately make a determination of which jobs [he] could perform by relying solely on . . . Vocational Rule . . . 202.02." *Heston*, 245 F.3d at 538.

Here, the record shows, the VE testified that Terrell *did* have transferable job skills and identified jobs that exist in significant numbers, in the national economy, that Terrell could perform. R. at 54-58. Terrell mounts no specific challenge to the VE's testimony. In the

circumstances, "the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work." *Wilson*, 378 F.3d at 549; *Heston*, 245 F.3d at 537-38 ("The ALJ based his finding of facts on the vocational expert's determination that there were 3,600 jobs available for someone with Heston's capabilities. Heston's argument that the ALJ improperly relied on [the Grids], in light of the ALJ's consideration of Heston's specific vocational profile and residual functioning capacity, is without merit.").[11]

Per this discussion, the Court finds no error in the ALJ's Step 5 determination.

## III. CONCLUSION

For the reasons stated, the Court **GRANTS** the Commissioner's motion for summary judgment (DE #16) and **DENIES** Terrell's motion for summary judgment (DE #15). The Court will enter a separate Judgment.

This the 14th day of June, 2017.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge

---

[11] With a transferrable-skills finding, Rule 202.03, as the Commissioner argues, likely would apply to mandate a "not disabled" finding, yet another reason to uphold the SSA's measured determination in these circumstances.